UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE DIMAS SORIANO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TOWN OF CICERO, OFFICER DINO VITALO, ) <br> OFFICER JASON STROUD, ) <br> OFFICER VITO PACIONE, ) <br> OFFICER STEVE HANDRICK, ) <br> OFFICER SCOTT, and ) <br> OFFICER JEFF PAWELSKI, ) <br> ) <br> Defendants. ) | No. 06 C 774 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jose Dimas Soriano, brought suit against Defendants, Town of Cicero and Officers Dino Vitalo, Jason Stroud, Vito Pacione, Steve Hendrick, Scott Harris, and Jeff Pawelski (collectively, "Defendants") of the Cicero Police Department, alleging four claims: (1) 42 U.S.C. § 1983 Excessive Force, (2) 42 U.S.C. § 1983 Failure to Intervene, (3) State Law Battery – willful and wanton, and (4) State Law Indemnification. Before the Court is Defendants' motion for summary judgment on all of Soriano's claims.

## BACKGROUND

This case stems from an April 11, 2004 incident that ended with Officer Vitalo's shooting Soriano. (Defs.' 56.1(a)(3) at ¶ 23.) On April 11, 2004, Soriano drove his vehicle on a road in Cicero, Illinois. (*Id.* at ¶¶ 10, 11.) As Soriano was driving, Officer Hendrick pulled up behind Soriano's vehicle, activated his emergency lights and attempted to make a traffic stop. (*Id.* at ¶ 11). Soriano pulled over to the side of the road. (*Id.* at ¶ 12). Officer Hendrick then exited his squad car and approached Soriano's

vehicle. Soriano waited until Hendrick reached the bumper of his vehicle and drove away from the Officer into traffic. (*Id.* at ¶¶ 13, 14.) Soriano alleges that he drove away from the Officer because he noticed Officer Hendrick "check gun and appear to have bad intentions." (Plaintiff's Response to Defs.' 56.1(a)(3) at ¶ 14.).

Soriano then continued to drive his vehicle and failed to stop for the police even after they had activated their emergency lights and were traveling behind him in their squad car. (Defs.' 56.1(a)(3) at ¶15). Soriano alleges that he was attempting to stop at a place where there would be more people around. (Pl.'s Response to Defs.' 56.1(a)(3) at ¶15.) During the pursuit, Soriano turned the wrong way onto one-way streets and collided with another car. (Defs.' 56.1(a)(3) at ¶¶ 16, 18.)

The pursuit eventually ended on 27th Street in Chicago, Illinois. (*Id.* at ¶¶ 19, 20.) Soriano stopped his vehicle but did not put it in park even though he saw an Officer approach his vehicle. (*Id.* at ¶¶ 20, 21.) Officer Vitalo approached Soriano's vehicle on the passenger side. (*Id.* at ¶ 21.) Officer Vitalo testified that Soriano failed to adhere to repeated orders to place the vehicle in park and exit. (*Id.* at ¶ 22.) Officer Vitalo testified that he then saw Soriano hit Officer Stroud with his vehicle. (*Id.* at ¶ 22.) Officer Vitalo testified that he shot Soriano because he feared for Officer Stroud's life. (*Id.* at ¶23.)

Soriano was arrested and charged in the Circuit Court of Cook County, Illinois, with attempted first-degree murder, aggravated battery of a peace officer with a dangerous weapon other than by discharge of a firearm, and aggravated fleeing and eluding. (*Id.* at ¶ 26.) Soriano's theory during the criminal trial was that the shooting was unprovoked and unjustified because Soriano never struck an officer with his vehicle. (*Id.* at ¶ 27.)

At the criminal trial, the State presented its case and had to prove beyond a reasonable doubt that Soriano was guilty of the criminal charges. (*Id.* at ¶¶ 27-29.) The circuit court judge instructed the jury on: (1) the elements of the charged crimes, (2) that an object or an instrument that is not inherently dangerous could be a dangerous weapon, and (3) justification for the use of deadly force in an arrest. (*Id.* at ¶ 31.) Specifically, the judge instructed the jury that an officer justifiably uses deadly force when he reasonably believes that "deadly force is necessary to prevent death or great bodily harm to another." (Pl.'s 56.1(b)(3)(C) at ¶ 9.) The jury returned a guilty verdict for aggravated battery to a police officer other than with a firearm and aggravated fleeing or eluding a police officer. (Defs.' 56.1(a)(3) at ¶ 32.) However, Soriano was found not guilty of attempted murder. (Pl.'s 56.1(b)(3)(C) at ¶ 6.) Judgment of conviction was entered on the guilty findings, and Soriano was sentenced to five years in the Illinois Department of Corrections thereon. (Defs.' 56.1(a)(3) at ¶ 32.)

Soriano filed a motion for a new trial, which was denied. (*Id.* at ¶ 33.) Soriano also filed an appeal and raised three issues: (1) the State failed to prove him guilty beyond a reasonable doubt, (2) the trial court erred in failing to properly respond to the jury's inquiry as to what constitutes bodily harm, and (3) the State made improper prejudicial comments during closing arguments. (*Id.* at ¶ 35.) The appellate court affirmed that Soriano committed aggravated battery to a peace officer because the jury found that Soriano accelerated his van towards Officer Stroud and hit him in the thigh area at least once. (*Id.* at ¶¶ 37, 38.) On February 10, 2006, Soriano filed the case at bar.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir.1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir.1994). Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir.1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir.1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## ANALYSIS

The Town of Cicero and the individual Officers filed separate motions for summary judgment. The Defendants assert three grounds for summary judgment: First, Soriano's claims are barred by the doctrine of collateral estoppel; second, the individual officers are entitled to qualified immunity; and third, any recovery here by Soriano would invalidate his state-court conviction, violating the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994) (*Heck*).

*Collateral Estoppel and the Heck Doctrine*

Both parties agree that Illinois estoppel law applies in this case. *See Migra v. Warren City School Dist. Ed. of Educ.*, 465 U.S. 75, 81 (1984) (federal courts should apply the state's collateral estoppel law in determining whether a § 1983 claim is precluded by a prior state-court judgment). Under Illinois law, collateral estoppel precludes relitigation of issues in a subsequent proceeding when: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there has been a final judgment on the merits in the prior adjudication; (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) the party sought to be bound actually litigated the issue in the first suit, and a decision on the issue must have been necessary to the judgment in the first litigation. *American Family Mut. Ins. Co. v. Savickas*, 193 Ill.2d 378, 387 (2000) (*American Family*).

Defendants argue that Soriano's claims here raise the same issues presented in his criminal case. Specifically, Defendants assert that in the case at bar, Soriano "contends

that he did not strike Officer Stroud with his vehicle. To be exact, [Soriano] states in his federal complaint that he did not pose any threat of harm or injury to anyone. Additionally, in his discovery deposition, [Soriano] specifically denied ever striking any police officer on April 11, 2004." (Cicero's Summary Judgment Motion, p.7). Moreover, Defendants assert that Soriano's complaint "states that there was never a police officer on the hood of his vehicle." *Id.* at pp.7-8.

Additionally, Defendants contend that the issue of whether Officer Vitalo used excessive force was already litigated during the criminal trial because the jury was instructed that an officer "is justified in the use of any force which he reasonably believes to be necessary to effect the arrest or to defend another from bodily harm while making the arrest . . . [a peace officer] is justified in using force likely to cause death or great bodily harm when he reasonably believes that such force is necessary to prevent death or great bodily harm to another." (Pl.'s 56.1(b)(3)(C) at Exh. 8).

Soriano here raises identical issues to those that were litigated before the criminal court. Soriano admits that when the State proved he was guilty of aggravated battery, the evidence established that Soriano "instigated a police chase through the Town of Cicero into the City of Chicago where [Soriano] was forced to stop on 27th Street. [Soriano] failed to exit his van, accelerated in the distraction (sic) of Stroud, struck him causing him to jump the hood of the van, and [Soriano] hit Officer Stroud with his van *before* [Soriano] was shot." (Defs.' 56.1(a)(3) at ¶ 36.) Moreover, the appellate court affirmed the criminal jury's verdict. (*Id.* at ¶ 37.) Thus, collateral estoppel bars Soriano from alleging that he did not strike Officer Stroud with his vehicle and that he did not pose a threat of harm or injury to anyone.

6

Additionally, Soriano's § 1983 claim would challenge the validity of his criminal conviction and violate the *Heck* doctrine. In *Heck*, the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487. To determine if the *Heck* doctrine prevents a plaintiff's § 1983 suit, the "district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

Defendants correctly assert that in order to establish an excessive-force claim, Soriano would have to show that Defendants' actions were unreasonable when effectuating the arrest. *Graham v. Connor*, 490 U.S. 386, 396-397 (1989) (*Graham*). The Seventh Circuit has held that police officers "may use even deadly force if the suspect poses a threat of serious physical harm, either to the officer or to others. [I]f the suspect threatens the officer with a weapon that risk has been established." *Bell v. Irwin*, 321 F.3d 637, 639 (7th Cir. 2003) (*Bell*) (internal quotations omitted). Additionally, "an automobile may be used as a deadly weapon." *Scott v. Edinburgh*, 346 F.3d 752, 757 (7th Cir. 2003) (*Scott*). As noted above, when the jury convicted Soriano of aggravated battery, they established that Soriano "hit Officer Stroud with his van *before* [Soriano]

was shot." (Defs.' 56.1(a)(3) at ¶ 36.). If the jury in the civil suit found that Soriano did not strike Officer Stroud and that he posed no threat to anyone, they would necessarily imply the invalidity of Soriano's criminal conviction, violating *Heck*. Therefore, Soriano's § 1983 excessive force claim with respect to Officer Vitalo's shooting is barred by the *Heck* doctrine.

However, Soriano also claims that after he was shot, Defendants dragged him out of his vehicle and into the middle of the street while pointing their guns at him. (Plaintiff's 56.1(b)(3)(C) at ¶ 11.) Soriano argues that this claim was not litigated during his criminal trial and should not be disposed of pursuant to collateral estoppel or application of the *Heck* doctrine. For collateral estoppel to preclude relitigation of issues, Defendants must show that issues decided in the prior adjudication are identical with the one presented in the suit in question. *American Family* at 387. It is clear that the actions of the individual Defendants, after Soriano was shot, were not adjudicated in the criminal trial. Therefore, collateral estoppel does not bar Soriano's claim that the Officers dragged him out of the vehicle and into the middle of the street while pointing their guns at him, nor is the *Heck* doctrine implicated.

## *Qualified Immunity*[1]

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (*Pearson*) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Furthermore, "qualified immunity balances two important interests –

---

[1] Soriano did not respond to Defendants' argument about qualified immunity.

the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 129 S.Ct. at 816. To determine whether qualified immunity applies, the court has to apply a two-prong test. The court must "decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."[2] *Id.*

Additionally, to defeat a qualified immunity defense, Soriano must show that his constitutional right is clearly established. *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000) (*Jacobs*). Moreover, to determine whether the constitutional right is clearly established, this Court must look to the Supreme Court precedent and Seventh Circuit decisions for guidance. *Id.* at 768.

<u>Excessive Force</u>

Excessive force claims invoke "the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham*, 490 U.S. at 394. Thus, in order to determine whether the arrest is "reasonable" under the Fourth Amendment, the court must weigh the intrusion on the individual's Fourth Amendment right against the government interests in making the arrest. *Id.* at 397. Additionally, "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with

---

[2] Defendants incorrectly state that the court must follow the two-step process mandated by *Saucier v. Katz*, 533 U.S. 194 (2001) (*Saucier*). The *Pearson* court held that "on reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson*, 129 S.Ct. at 818.

the 20/20 vision of hindsight." *Id.* Moreover, the court should recognize that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-397. Finally, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397.

"[E]vidence of a prior criminal conviction is admissible in a civil proceeding as *prima facie* evidence of the facts upon which the conviction is based if those facts are relevant to some issue involved in the civil proceeding." *Brown v. Green*, 738 F.2d 202, 206 (7th Cir. 1984) (*Brown*). Moreover, for the "*prima facie* rule to apply, the criminal proceedings must have been 'of sufficiently serious import' to ensure the reliability of the conviction." *Id.* In *Brown*, the court found the criminal proceedings to be "of sufficiently serious import" because they "were for a serious crime for which Brown was represented by counsel." *Brown* at 209. The case at bar also involves a serious crime in which Soriano was represented by counsel. Thus, the evidence of the previous criminal conviction should be considered *prima facie* evidence in Soriano's civil lawsuit.

The facts admitted by Soriano are sufficient to show that the use of deadly force was justified. Specifically, Soriano admits that during the April 11, 2004 incident, he led Cicero Police Officers on a chase that started in Cicero and ended in Chicago. Soriano was forced to stop on 27th Street, where he failed to exit his vehicle. Furthermore, Soriano then accelerated his vehicle towards Officer Stroud, struck him, and forced Officer Stroud to jump onto the hood of the vehicle. (Defs.' (2)(3) at ¶ 36.)

10

"[I]f an officer believes that the suspect's actions place him, or others in the immediate vicinity, in imminent danger of death or serious bodily injury, deadly force can reasonably be used." *DeLuna v. City of Rockford, Ill.*, 447 F.3d 1008, 1010 (7th Cir. 2006). Soriano placed Officer Stroud in imminent danger when he hit Officer Stroud with his vehicle. Therefore, using the "reasonableness" standard established in *Graham*, a reasonable officer at the scene would have reasonably perceived the danger to Officer Stroud and reacted as Officer Vitalo did. *See Scott*, 346 F.3d 752 (an officer's use of deadly force was reasonable due to the danger the suspect presented to third parties).

Additionally, Soriano claims that officers, acting reasonably, would not have dragged him out of the car and into the middle of the street while pointing their guns at him. However, the *Graham* Court held that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396. Applying the "reasonableness" standard, a reasonable officer at the scene could have reacted as Defendants did when they dragged Soriano out of the vehicle into the middle of the street and pointed their guns at him. The Officers were presented with a situation in which Soriano just committed aggravated battery to a peace officer after leading the police on an automobile chase that began in Cicero, Illinois, and ended in Chicago, Illinois, and was still in control of the automobile before being removed by the Officers. In light of these dangerous circumstances, reasonable officers would have reacted as Defendants did. Therefore, Defendant Officers are granted summary judgment with respect to the excessive-force claim.

## Failure to Intervene

An officer may be liable under § 1983 if he is present and fails to intervene while other officers are infringing on a citizen's constitutional rights. *Yang v. Hardin*, 37 F.3d 282, 295 (7th Cir. 1994). Additionally, the officer must have "reason to know (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Id.*

As discussed above, the facts show that Defendant Officers did not use excessive force when effectuating his arrest. Thus, Defendants officers did not have a duty to intervene and are not liable under 42 U.S.C. § 1983. Summary judgment is therefore granted in favor of Defendant Officers with respect to the failure-to-intervene claim.

### *State Law Battery*

According to Illinois law, "a person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a). Additionally, the *Tort Law Immunity Act* protects public employees while they enforce the law unless their acts are willful or wonton. 745 ILCS 10/2-202. *Washington v. Village of Riverside, Ill.*, No. 01 C 7438, 2003 WL 1193347, at *8 (N.D.Ill. March 13, 2003) (*Washington*). Defendants correctly assert that if the force used by the Officers was reasonable and justified, Soriano's state-law battery claim must fail. *Id.* Therefore, because the force used to arrest Soriano was reasonable and justified, summary judgment is granted on this claim as well.

12

*Indemnification*

As determined above, the Defendant Officers are not liable to Soriano. Thus, the Town of Cicero is not liable as their employer, and summary judgment is granted in favor of the Town of Cicero on the indemnification claim.

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is granted.

Dated: August 25, 2010

JOHN W. DARRAH
United States District Court Judge